AIDA BAHR *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 2-674-51439

Argued December 16, 1968—decided February 21, 1969

*Donald C. Cousins,* of Bridgeport, for the appellant (plaintiff).

*Edward J. Holahan, Jr.,* of Bridgeport, for the appellee (defendant).

DEARINGTON, J. The plaintiff alleged that on or about February 22, 1966, she applied to the defendant and was issued a policy insuring her for hospital, physician and surgical benefits. On October 14, 1966, she was admitted to a hospital, and on October 25 she was operated upon for a cholecystectomy condition. The defendant has refused to make payments for benefits under the terms of the policy. The defendant, while admitting the existence of the policy, claims in its special defense that among other questions in the application required to be answered by the plaintiff was one relating to prior medical examinations and that the plaintiff in response had stated she was examined by a doctor at the United States embassy in Spain and that the examination was negative. Such statements, the defendant claims, were false, for the plaintiff had been examined several times by a doctor in Connecticut during 1965 and 1966, and her failure to report such examinations or visits constituted fraud. It is further alleged that the defendant tendered the

premiums paid on the policy. In her reply to the special defense, the plaintiff did not deny such visits to her doctor but claims not to read or speak English and states that at the interview with the defendant's agent, Carroll, her son and daughter were present and that her recent visits to a doctor and her preexisting diabetic condition were disclosed by them to the agent and he either omitted or disregarded such information and therefore the defendant is estopped to assert fraud for it is bound by the knowledge of its agent. These allegations were traversed by the rejoinder.

The case was tried to a jury and at the conclusion of the trial the defendant moved for a directed verdict, which motion was denied. A verdict was returned in favor of the plaintiff, whereupon the defendant moved to set the verdict aside, claiming it was against the evidence and furthermore that it was contrary to law. At the same time, the defendant orally moved for judgment notwithstanding the verdict. The court stated it would reserve its decision on the latter motion until such time as it acted on the motion to set aside the verdict. Thereafter, the court set the verdict aside but through oversight did not act on the motion for judgment notwithstanding the verdict. Subsequently, this situation was brought to the attention of the court, and it thereupon granted that motion also. The plaintiff has appealed, assigning error, as set forth in her brief, (1) in the granting of the motion to set the verdict aside, because it was supported both by the law and the evidence; (2) in the granting of the motion for judgment notwithstanding the verdict, because the verdict was supported both by the law and the evidence; and (3) in the granting of both motions, because such a result is inconsistent. The plaintiff seems to have departed to some extent from such assignments in her arguments and brief. We

will, however, review her assignment of errors as briefed.

Among other provisions in the application, the following appeared: "I hereby declare that the above statements are complete and true. . . . I agree (1) that this application . . . shall . . . become a part of the policy; (2) that no agent has the authority to waive the answer to any question . . . or to waive any of the Company's rights or requirements with respect to the application, or to bind the Company by making any representation or by giving or receiving any information."

The rationale of the court in granting the motion to set aside is to be found in its memorandum of decision on the motion, wherein it stated that the issue presented for its determination was "whether the agent had the right on behalf of the company to waive the answer involved," that is, her alleged answer relating to her diabetic condition and visits to her doctor. The court reasoned that it must be shown that the defendant had knowledge of the information claimed to have been given to its agent before a waiver could become effective, for the policy contained a provision that "no agent has authority to waive the answer to any question in the application." In short, the court concluded that the plaintiff was not entitled to judgment because there was no evidence that the defendant had waived any requirements in the application. The court cited, among other cases, *Ward* v. *Metropolitan Life Ins. Co.*, 66 Conn. 227, 240, in support of its position. In its subsequent memorandum of decision granting the motion for judgment notwithstanding the verdict, the court reiterated the position it had taken in its prior memorandum and added that it was apparent that a new trial would not produce evidence which would permit a verdict in favor of the plaintiff.

The plaintiff claims that there was sufficient evidence of waiver or estoppel which had its origin in conduct antecedent to the contract to afford the jury the right properly to return a verdict in her favor and that error was committed in setting the verdict aside. The defendant concedes that, viewing the evidence in the most favorable light for the plaintiff as we must; *Grills* v. *Pepsi-Cola Bottling Co.,* 151 Conn. 627, 628; the jury could reasonably have found that the plaintiff, through her son, disclosed information to the defendant's agent relating to her diabetic condition and medical history. It is evident that such information was not entered on the application. It is also evident that the plaintiff could not read English, and the agent admitted that the plaintiff's answers as they appear in the application were not read back to her.

We first consider the question of waiver or estoppel raised by the plaintiff. While the words waiver and estoppel are often used interchangeably by the courts, there is, however, a real distinction. For a review of that distinction, see such cases as *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547; and *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 392. The plaintiff relies heavily on *MacKay,* in which the court held (p. 548): "When the insurer, at the time of the issuance of the policy, has knowledge of existing facts which, if insisted on, would invalidate the contract from the time of its inception, it may be held, by delivering the policy and accepting the premium, to waive the cause of avoidance or to be estopped from insisting upon or taking advantage of it. . . . The possession by the insurer of knowledge of invalidating facts is universally recognized as an essential prerequisite, but the effect of knowledge of the agent of the insurer is a subject upon which there is a confusing diversity of authority. A majority of courts hold that, subject

to exceptions in case of fraud . . . , information communicated to or knowledge otherwise obtained by an agent within the scope of his authority—while he is acting in a matter in which he is required or authorized to act and the information is necessarily incident to that matter and affecting the liability of the company—is knowledge of the principal, the insurer." See *Ward* v. *Metropolitan Life Ins. Co.,* 66 Conn. 227, 240; 29A Am. Jur., Insurance, § 1060; note, 148 A.L.R. 507, 508.

The question arises whether the insurer may, through limitation or restriction upon the authority of its agent, be permitted to disclaim its responsibility for the errors of its agent in recording the answers of the insured in the application. On this subject there is a diversity of opinion. 29A Am. Jur., Insurance, § 1034. In this jurisdiction, however, it seems clear that our rule permits an insurer to restrict the authority of its agent by so providing in the application and policy. In *Ward* v. *Metropolitan Life Ins. Co.,* supra, it was not disputed, except in the pleadings, that certain statements in the application of a material character were untrue, the plaintiff claiming that truthful statements had been made to the defendant's soliciting agent and that he had not entered such material in the application. The policy contained a provision not unlike that in the instant case, that is, that the insurer would not be bound by any waiver not authorized by a principal officer. The court held (p. 241) that such provisions "were designed to exclude the operation of the rule that notice to the agent who negotiates a contract is notice to the principal; and such was their necessary effect." See *O'Connor* v. *Metropolitan Life Ins. Co.,* 121 Conn. 599, 604; *Ryan* v. *World Mutual Life Ins. Co.,* 41 Conn. 168, 175; note, 148 A.L.R. 507, 512 § 3. The rule appears to be similar in New York. *New York Life Ins. Co.* v. *Rigas,* 117

Conn. 437, 441. While there was some evidence that the plaintiff had previously applied to the defendant for insurance and that such application had been rejected for reasons other than medical, there was no evidence produced by the plaintiff that the defendant had knowledge the statements contained in the application were untrue. *Ward* v. *Metropolitan Life Ins. Co.,* supra, 241. Moreover, the former application had no place in the case, since there was no evidence to support a claim of estoppel based on it. *Kelly* v. *John Hancock Mutual Life Ins. Co.,* 131 Conn. 106, 111.

In an effort to avoid the application of this rule, the plaintiff contends that she was not chargeable with notice that the limitation would apply by retroaction. She claims that the application was executed on February 22, 1966, and that it was received by the New England home office on March 3, 1966, the latter date being the date the policy was actually accepted, approved or issued, although the policy bears the date February 22, 1966. Thus, she argues the limitation stipulation in the policy operated in a retroactive manner. The plaintiff argues that the situation in the instant case as it relates to the question of retroaction is identical with that existing in *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538. In *MacKay,* the insured applied for life insurance, and on the same day was examined by a medical examiner for the company and found to be a good physical life insurance risk. A policy was issued which contained a provision respecting good health and provided further that only an officer of the company could waive any provision of the policy. Upon the death of the insured, the company refused to honor the terms of the policy respecting payment, claiming a violation of the good health condition. The court in this respect held (p. 546) that " 'the insured became chargeable with notice, upon the

acceptance of the policies, that there was no authority in the agent to waive the breach of a condition coming to his notice after a policy had been delivered as a contract presently existing. . . . She was not chargeable with notice that the limitation would apply by retroaction so as to nullify a waiver or estoppel having its origin in conduct antecedent to the contract.' "

We find a material distinction between the facts in *MacKay* and those in the instant case. The facts in the instant case more nearly parallel those in *Ward* v. *Metropolitan Life Ins. Co.*, supra. In *Mac-Kay,* the court said (p. 553), in distinguishing the circumstances there existing from those in *Ward,* that "there is not present, as in the *Ward* case, a stipulation in both application and policy that 'no information, statements, or representations made or given by or to' the agent 'shall be binding on the company, or in any manner affect its rights,' unless reduced to writing and presented to the officers of the company." In the instant case, the stipulation in the application executed by the plaintiff limited the agent's authority, and the application was attached to and made a part of the policy. Since the application was made a part of the policy, the rule of retroaction did not come into operation. See note, 81 A.L.R. 833, 871, and cases cited; 17 Appleman, Insurance Law and Practice § 9414. No error was committed in the action of the court in granting the motions.

The plaintiff raises the question of her inability to speak and read English. Such a language barrier did not exist with her son, who was present and acted as her interpreter and who had an excellent command of English. See *Russo* v. *Metropolitan Life Ins. Co.,* 125 Conn. 132, 137. Having accepted and retained the policy, the plaintiff was bound by

its provisions. Ibid. She was under a duty to know the contents of the application signed by her. *Kelly v. John Hancock Life Ins. Co.,* supra, 110; *Ryan v. World Mutual Life Ins. Co.,* supra, 172; 29A Am. Jur., Insurance, §§ 1070, 1071.

Further error is assigned in the granting of the motion to set aside the verdict because of errors in the charge. The court instructed the jury that the plaintiff was not chargeable with the language in the application unless she had knowledge of it. In the memorandum of decision on the motion to set the verdict aside, the court stated that its instructions on this subject were not in accord with the law. The plaintiff contends that the instructions as given were correct. The instructions on this subject were not in accord with our law, which we have heretofore reviewed. The court "has the inherent power to set aside a verdict where it finds it has made, in its instructions, rulings on evidence, or otherwise in the course of the trial, a palpable error which was harmful to the proper disposition of the case and probably brought about a different result in the verdict. Such power is indispensable to the proper administration of justice, otherwise the court would be powerless to undo the wrong it had unintentionally done in the course of the trial although it had become aware of the error it had made in time to right the wrong." *Munson v. Atwood,* 108 Conn. 285, 288. Such power, however, should be exercised with great caution and never unless the trial judge is entirely satisfied that his error is unmistakable and must have been unquestionably harmful. *Jackiewicz v. United Illuminating Co.,* 106 Conn. 310, 311. We find no error in the action of the court in setting the verdict aside. See *Trainor v. Frank Mercede & Sons, Inc.,* 152 Conn. 364, 366; *Donch v. Kardos,* 149 Conn. 196, 200; *Ward v. Metropolitan Life Ins. Co.,* 66 Conn. 227, 241.

Finally, the plaintiff assigns error in the granting of the motion to set aside the verdict and the motion for judgment notwithstanding the verdict because in granting them the trial court ignored the question of the defendant's failure to request or obtain a medical examination of the plaintiff, a question which she claims was for the jury's consideration as evidence of waiver or estoppel. The policy contained a provision giving the defendant the right to have a physical examination made of the plaintiff when such an examination was reasonably required. The plaintiff, however, did not request the court to charge on this subject, and it does not appear that she took an exception in this respect. Practice Book § 249; *Ursini* v. *Goldman,* 118 Conn. 554, 563; *Barbieri* v. *Pandiscio,* 116 Conn. 48, 53. For these reasons this assignment requires no further consideration.

There is no error.

In this opinion WISE and KINMONTH, Js., concurred.