[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR CONTEMPT
The plaintiff has filed a motion for contempt against the defendant dated March 25, 1991, coded #114.
Many of the facts that give rise to this motion are not in dispute.
On May 6, 1983, a dissolution of marriage was granted in this case. The relevant court orders were as follows:
 With regard to a property that the parties own at 1271 Old Colony Road in Wallingford, that is now rented for the net sum of $400 a month, it's understood that the defendant is collecting the rent from the property and it's being used to pay this mortgage and taxes, plus he adds to that for the house upkeep, he adds to that one hundred and some eighty dollars per month from money he borrows from American Cyanamid credit union, this leaves him 112 which is added to the initial net of 131 to get to the net bottom figure.
 The plaintiff is requesting the Court will order that in the event the defendant pays the plaintiff $4800 on or before August 1, 1983, then the plaintiff will convey any interest she may own in and to this property to the defendant. In the event he does not buy her out for the $4800 as aforementioned, then the plaintiff is requesting the house be sold, however, and she receive one-half of the net proceeds coming from the sale of the property.
 However, if the defendant shows no inclination and does not in fact cooperate with the sale of this property within 30 days from August 1, 1983, then the Court orders the defendant must CT Page 8376 convey the property to the plaintiff and the plaintiff is then ordered to sell the property, and give to the defendant one-half of the net proceeds, whatever they may be.
 In the meantime, prior to the sale of the house, the defendant is ordered to pay the mortgage, the taxes, and expenses of upkeep et cetera, regarding this property for the joint interests until such time as it is sold.
 At the same time he will receive a rent for this property. The defendant is to hold the plaintiff harmless regarding any of the above mentioned expenses.
The motion for contempt alleges that the defendant owes the plaintiff the following sums:
 3. That the total amount of moneys now owed to the plaintiff wife by the defendant husband are as follows:
 a. Total support which has never been paid from May 6, 1983 to March 22, 1991 at $90.00 per week for 410 weeks .................... $36,900.00
 b(1). Total moneys not paid on the mortgage arrearage prior to March 22, 1991 .......................... 2,148.78
 b(2). Total moneys not paid on the mortgage from March 22, 1991 to September 15, 1991 (7 months x 695.00) ............. 4,865.00 Total of monies not paid on the mortgage from October 15, 1991 to May 8, 1992 (6 months x 653.69) ............. 3,923.94 TOTAL ARREARAGE ....... 8,788.94
 c. Total of moneys loaned by the wife to the defendant husband on "The mortgage, the taxes, and expenses of upkeep et cetera" after husband left home on 3/15/87 CT Page 8377
 8/31/89 New Haven Savings Bank 1,300.00 10/31/89 New Haven Savings Bank 300.00 12/8/89 New Haven Savings Bank 150.00 1/5/90 New Haven Savings Bank 80.00 1/20/90 New Haven Savings Bank 300.00 2/30/90 New Haven Savings Bank 300.00 3/22/90 New Haven Savings Bank 400.00 3/30/90 New Haven Savings Bank 300.00 9/19/90 New Haven Savings Bank 700.00 10/14/90 New Haven Savings Bank 300.00 4,130.00
 d. Second mortgage to New Haven Savings Bank ............................ 10,000.00
e. Repairs
 4/6/89 Spruce Construction 800.00 4/3/89 Darrell Grant 220.00 5/14/91 Roof Repair 600.00 1,620.00
f. Loans to Aldo
 3/4/89 Cash 500.00 3/10/89 Aldo D'Agostino 500.00 1,000.00
TOTAL AMOUNT DUE: $64,587.72
The court finds the additional following facts regarding this motion for contempt.
At the time of the dissolution, the property located at 1271 Old Colony Road, Wallingford, Connecticut, was in the name of both the plaintiff and the defendant and was rented to a third party for $400.00 per month. The parties are in agreement that after the dissolution of marriage the plaintiff and the defendant, together with the two minor children of the marriage, occupied the property at 1271 Old Colony Road, Wallingford Connecticut, but do not agree as to what the initial date of occupancy was. The plaintiff claims that joint occupancy commenced on or about October of 1983, and the defendant claim that it commenced in August of 1983. The court finds that the parties commenced to occupy the property together in August of 1983 and continued to occupy the property together with the two minor child until March of 1987. The defendant did not pay to the plaintiff the court-ordered support of $90.00 per week between May 6, 1983 and October of 1983. During the period of time that the parties occupied the property at 1271 Old Colony Road, Wallingford, Connecticut, from August of 1983 to March of CT Page 8378 1987, the reasonable value of the use and occupancy of the property for the plaintiff and the two minor children exceeded the $90.00 per week support order that the defendant was required to pay. When the defendant vacated the property in March of 1987, the mortgage payment was approximately $700.00 per month. When the defendant vacated the premises in March of 1987 he requested the plaintiff to pay him rent. The parties agreed that the defendant would continue to keep the mortgage payment current and the plaintiff would be responsible for the upkeep for the residence and no support would be paid by the defendant to the plaintiff. Other than for paying the upkeep on the premises, the plaintiff would not pay to the defendant any amount for use and occupancy or rent. The parties further agreed that in the event an unrelated male moved in with the plaintiff, then the plaintiff and/or the unrelated male was to pay to the defendant $300.00 per month which the defendant would use towards the mortgage payment. In June of 1989 the plaintiff's boyfriend also commenced to occupy the property in question. The $4,130.00 paid by the plaintiff to the New Haven Savings Bank between August 31, 1989 and October 14, 1990 constitutes the $300.00 monthly rent that the plaintiff agreed to pay while her boyfriend occupied the residence. The plaintiff has continued to occupy the residence from August 1983 to January 25, 1992 with the two minor children. On or about January 25 of 1992 there was fire damage to the property and the plaintiff vacated the residence. Since the dissolution decree gave to the defendant the right to collect the rent from the property, he also had the right to determine who would occupy the property and what rent would be charged for such occupancy.
On March 21, 1991, the support order was increased to $105.00 per week for each of the two minor children, for a total of $210.00 effective March 29, 1991. The defendant has been paying that support amount but has not been paying the mortgage. The plaintiff has been making the mortgage payment from March of 1991 to the present time. The total mortgage payments made by the plaintiff from March 22, 1991 to September 15, 1991 amounts to $4,865.00. The total mortgage payments paid by the plaintiff for the period of October 15, 1991 to May 8, 1992 amounts to $3,923.94. Between 1989 and the present time the reasonable rental value of the property is $700.00 per month. On April 6 1989 the plaintiff paid Spruce Construction Company $800.00 for bathroom repair. On April 3, 1989 the plaintiff paid Darrell Grant $220.00 for paint for the house. On May 14, 1991 the plaintiff paid Watertight Roofing $600.00 for roof repair. The property was damaged by fire on January 25, 1992. The plaintiff maintained fire insurance on the property and received $37,000.00 of insurance proceeds for repairs plus $28,000.00 insurance proceeds for her contents for the home, plus $8,175.09 for her living expenses. She is responsible for paying fees incurred in CT Page 8379 negotiating those sums. The plaintiff agreed to accept free use and occupancy of the property as an alternative method of payment of child support from August 1983 to March 21, 1991.
The defendant raises the defenses of waiver, laches, and equitable estoppel to the plaintiff's claims of arrearages.
In discussing the defense of waiver, the court in Lownds v. Lownds, 41 Conn. Sup. 100 at 107, stated in part as follows:
 Waiver is the intentional relinquishment of a known right. Olean v. Treglia, 190 Conn. 756, 773, 463 A.2d 242 (1983); see also Bozzi v. Bozzi, supra.
In discussing the defense of laches, the court in Bozzi v. Bozzi, 177, Conn. 232, 239 (1979), stated in part as follows:
 Laches consists of two elements. "First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685, 116 A.2d 906 (1955); Kievman v. Grevers, 122 Conn. 406, 411, 189 A. 609 (1937); 27 Am.Jur.2d, Equity 152. The mere lapse of time does not constitute laches; Finucane v. Hayden, 86 Idaho 199, 206, 384 P.2d 236 (1963); 27 Am.Jur.2d, Equity 163; unless it results in prejudice to the defendant; see Leary v. Stylarama of New Haven, Inc., 174 Conn. 217, 219, 384 A.2d 377 (1978); Bianco v. Darien, 157 Conn. 548, 556, 254 A.2d 898 (1969); as where, for example, the defendant is led to change his position with respect to the matter in question. Pukas v. Pukas, 104 R.I. 542, 545-46, 247 A.2d 427 (1968).
The court finds that the delay of the plaintiff in filing the motion for contempt based on the failure of the defendant to pay support from May 6, 1983 to the date the plaintiff filed the motion for contempt on March 25, 1991, was inexcusable. The court further finds that the delay has prejudiced the defendant in that the defendant did not attempt to have the plaintiff pay him the reasonable rental value for the premises occupied by the plaintiff and the two minor children at 1271 Old Colony Road CT Page 8380 Wallingford, Connecticut. The defendant had the right to determine who would have possession of the premises during this period of time and what amount of rent would be charged to such tenant as well as having the right to receive that rent. The defendant allowed the plaintiff to occupy the premises during this period of time without seeking to collect rent from her other than for the period of time that her boyfriend also occupied the premises. The court therefore concludes that the plaintiff was guilty of laches for her failure to seek payment of the court-ordered support for the two children for the period of May 6, 1983 to March 25, 1991.
In discussing the defense of equitable estoppel, the court in Bozzi v. Bozzi, supra, page 241-242, stated in part as follows:
 "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." 3 Pomeroy, Equity Jurisprudence (5th Ed. 1941) 804, p. 189; 28 Am.Jur.2d, Estoppel and Waiver 76; accord, Spear-Neuman, Inc. v. Modern Floors Corporation, 149 Conn. 88, 91, 175 A.2d 565 (1961); Tradesmens National Bank of New Haven v. Minor, 122 Conn. 419, 424, 190 A. 270 (1937); MacKay v. Aetna Life Ins. Co., 118 Conn. 538, 548, 173 A. 783
(1934). Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would have have done. Dickau v. Glastonbury, 156 Conn. 437, 441, 242 A.2d 777 (1968); Pet Car Products, Inc. v. Barnett, 150 Conn. 42, 53, 184 A.2d 797 (1962); see Bealle v. Nyden's, Inc., 245 F. Sup. 86, 93-94 (D.Conn. 1965); 28 Am.Jur.2d, Estoppel and Waiver 27, p. 627. CT Page 8381
In this case the court finds that the plaintiff agreed with the defendant to occupy the property at 1271 Old Colony Road Wallingford, Connecticut, as an alternative method of payment of child support for the period of May 6, 1983 to March 25, 1991 The defendant believed that the plaintiff would not seek child support in lieu of having to pay for the reasonable rental value of the property and as a result of that, allowed the plaintiff to occupy the property without charging rent therefore., The court therefore, finds that the plaintiff is equitably estopped from asserting her claim for past support for the two children for the period of May 6, 1983 to March 25, 1991.
The court makes the following additional findings of fact regarding the defenses of waiver, laches, and equitable estoppel. The plaintiff voluntarily and without duress occupied the premises at 1271 Old Colony Road, Wallingford, Connecticut, from October 1983 to January 25, 1992, which was the date of the fire to the premises. The plaintiff expected to have free use and occupancy of the premises with the two minor children as long a she did not reside there with an unrelated male other than the defendant in exchange for the defendant not paying her support. The plaintiff expected to pay $300.00 monthly to the defendant for use and occupancy of the premises during the period of time she resided there with her boyfriend in exchange for the defendant not paying her support. The agreement between the parties remained in effect from August 1983 to March 1991. The defendant relied on the plaintiff's agreement that she would not seek support for the period of August 1983 to March 25, 1991. At all times mentioned herein the plaintiff knew that she had the right to require the defendant to pay the court-ordered support payments.
On or about November of 1991 the defendant commenced to fall behind on the court-ordered mortgage payments that he was ordered to pay as part of the dissolution orders of May 6, 1983. The plaintiff made three mortgage payments totalling $2,039.52 on or about May 8, 1992 for mortgage payments that the defendant was in arrears. The defendant owes that amount to the plaintiff. In addition, the defendant did not make the mortgage payments from March 22, 1991 to September 15, 1991 which the plaintiff was required to make to the bank totalling $4,865.00. Further, the defendant did not make the mortgage payments for the period of October 15, 1991 to May 8, 1992, which the plaintiff was required to make, totalling $3,923.94. The total mortgage payments made by the plaintiff that were the responsibility of the defendant total $10,937.72. Both parties were in agreement that the reasonable rental value of the property between the period of March 21, 1991 to January 25, 1992 is $700.00 per month. The plaintiff owes to the defendant ten months of use and occupancy CT Page 8382 that totals $7,000.00. Therefore, the net arrearage due to the, plaintiff from the defendant is $3,937.72 arising out of nonpayment of mortgage payments and use and occupancy. In addition, the plaintiff is claiming $800.00 paid to Spruce Construction on April 6, 1989, $220.00 to Darrell Grant on April 3, 1989, and $600.00 paid for the roof repair on May 14, 1991. The payments to Spruce Construction and Darrell Grant were during the period of time that the plaintiff agreed to be responsible for the upkeep of the property as part of the agreement for nonpayment of child support. Therefore, the defendant is not responsible for reimbursement to the plaintiff for those payments. The payment for the roof repair on May 14, 1991, is a payment for which the defendant was responsible under the term of the original divorce decree. Therefore, he is responsible and liable to reimburse the plaintiff for that sum. Insofar as the two claims of $500.00 each for loans to the defendant, the plaintiff testified that that amount has since been repaid to her. Insofar as the $10,000.00 second mortgage is concerned, the defendant agreed that he is solely responsible for the payment of the second mortgage and the court so finds.
The arrearage of $3,937.72 previously found when added to the roof repair of $600.00 results in a total arrearage due to the plaintiff from the defendant of $4,537.72. The defendant continues to be liable for payment of the first mortgage under the terms of the original dissolution decree. Under the circumstances of this case, the court finds that the defendant has not been wilful in his prior nonpayment and therefore does not find him in contempt.
The final claim to be addressed is the claim of the plaintiff that the defendant should be required to convey the home to the plaintiff so she can sell the home to herself and give him one-half of the net proceeds after deducting the amount that he owes to her. The original court order on May 6, 1983 provided in part that:
 . . . However, if the defendant shows no inclination and does not in fact cooperate with the sale of this property within thirty days from August 1, 1983, then the court orders the defendant must convey the property to the plaintiff and the plaintiff is then ordered to sell the property, and give to the defendant one-half of the net proceeds, whatever they may be.
The court finds from the evidence that there was no attempt by either the plaintiff or the defendant to sell the property CT Page 8383 within thirty days from August 1, 1983. Accordingly, the plaintiff does not have the right to have the property conveyed to her. The original decree requires that the property be sold and that remains in full force and effect. That same original order also requires the defendant to pay the mortgage, the taxes and expenses of upkeep of the property, and that order remains in full force and effect.
The plaintiff has the right to deduct the arrearage owed to her in the amount of $4,537.52 from the plaintiff's share from the sale of the family home. In the event the home is not sold within 60 days from today's date, the plaintiff then has the right to ask for a hearing to set a weekly order for the payment of the arrearage.
Sidney Axelrod, Judge